GERD WESSELS *et al.*

*v.*

L. S. COLEBANK.

*Opinion filed October 24, 1898.*

1. FREEHOLD—*a suit requiring determination of existence of perpetual easement involves a freehold.* A suit the issues of which necessarily require the determination of the existence or non-existence of a perpetual easement in land, involves a freehold.

2. DRAINAGE—*Drainage act of 1889 converts license to build drain into an easement.* The Drainage act of 1889, (Laws of 1889, p. 116,) concerning drains constructed by mutual consent, agreement or license of the owners of adjoining lands, operates to convert all parol licenses for such drains, which were not revoked within the time limited by the act, into perpetual easements.

3. SAME—*right to perpetual drainage easement is binding on owners of lands and their grantees.* The Drainage act of 1889 (Laws of 1889, p. 116,) has the effect to make a drain constructed in the manner therein indicated an encumbrance upon the land through which it runs, and the right to have the ditch maintained and to have the water flow through it unobstructed is a permanent one, binding upon the owners of the land and their grantees.

4. SAME—*owners of dominant estate may go upon the servient estate to make repairs.* Owners of land having a perpetual easement in form of a drain constructed across the land of another have a right of access to the land through which it runs, and may go upon the same and make necessary repairs to keep the flow unobstructed.

WRIT OF ERROR to the Circuit Court of Iroquois county; the Hon. JOHN SMALL, Judge, presiding.

This was an action of trespass *quare clausum fregit,* brought by defendant in error, L. S. Colebank, against the plaintiffs in error, for breaking and entering his close, and with shovels, spades, etc., cleaning out and deepening a ditch across the same, piling up the earth and sediment in mounds and ridges, and damaging his grass and crops. To this plaintiffs in error filed their plea of not guilty, and also a special plea, in which they admitted the acts complained of and attempted to justify under a claim

of right. Defendant in error demurred to the plea, the court sustained the demurrer, and the plaintiffs in error elected to stand by their plea. A trial was then had before the court without a jury, and plaintiffs in error admitted the doing of the acts charged. The court rendered judgment in favor of defendant in error for one cent and costs, to which judgment plaintiffs in error excepted, and have sued out this writ of error from this court. Defendant in error has entered a motion in this court to dismiss the writ of error, alleging that no freehold is involved in this controversy.

The special plea averred that a number of land owners adjoining the close now the property of defendant in error, and whose lands naturally had surface drainage over said close, in the year 1887 did, by mutual license, consent and agreement, construct a continuous open drain from the highway on the south of section 22 over and across the west half of said section to the road ditch on the north of the section, said open drain running across the aforesaid close, which was then the property of George Egley, who joined in the construction and maintenance of the drain for the benefit of his own land; that said drain has, from the time it was constructed, been maintained, cleaned out and repaired by the town authorities and the owners of the lands affected, from time to time, and that said acts of maintenance, cleaning out and repairing were at all times done with the license and consent of the owner, for the time being, of this close; that neither Egley nor any of his grantees ever did, in any manner, prior to July 2, 1890, revoke the parol license so given in 1887 to construct the said open drain across this close; that thereby the drain became and was, prior to July 3, 1890, and has remained from thence to this time, according to the statute, a continuous open drain for the mutual benefit of all the lands affected; that in 1897 this drain was in need of repair and required spading out of the earth and sediment that had collected in the same, and that certain of

the defendants who were property holders interested in the maintenance of the drain,—one of them being a highway commissioner,—had directed the other defendants to clean out the drain, which was done without doing any unnecessary damage to plaintiff's close.   The grounds of demurrer were that it did not appear from the plea that the defendant land owners, by any legal or sufficient conveyance or by any ancient right, ever acquired or had any permanent or good right or authority to keep up or repair said drain, or to enter upon said close for that or for any other purpose.

KAY & KAY, for plaintiffs in error.

A. F. GOODYEAR, for defendant in error.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

The motion to dismiss the writ of error on the ground that no freehold is involved in the case has been reserved to the hearing and will be disposed of first.

The rule, as frequently announced by this court, is, that a freehold is involved in cases only where either the necessary result of the judgment is that one party gains and the other loses a freehold estate, or where the title to a freehold is so put in issue by the pleadings that a decision of the case necessarily involves a decision of such issue, although the judgment or decree does not result in one party gaining and the other losing the estate. (*Hibernian Banking Ass.* v. *Commercial Nat. Bank*, 157 Ill. 576; *Goodkind* v. *Bartlett*, 136 id. 18, and cases cited.) The question is presented by the decision of the court in sustaining the demurrer to the plea.   If the facts alleged in the plea, which were admitted by the demurrer, show that the plaintiffs in error, who were the owners of the adjoining lands through which the ditch had been excavated and maintained, had a perpetual easement in the

close of defendant in error to have the drain kept open, so that the waters flowing through the same upon their lands might flow unobstructed through the ditch as it extended through the close of the defendant in error, then a freehold is involved. *Chronic* v. *Pugh*, 136 Ill. 539.

Independently of the statute it is clear that the right enjoyed by plaintiffs in error was a mere license, revocable at the pleasure of the owner of the close, and that the conveyance of the close without reservation of the right would revoke the license. The statute referred to is the act entitled "An act declaring legal, drains heretofore or hereafter constructed by mutual license, consent or agreement, by adjacent or adjoining owners of land, and to limit the time within which such license or agreement heretofore granted may be withdrawn," approved June 4, 1889, in force July 1, 1889. (Laws of 1889, p. 116.) Section 1 makes drains constructed by mutual license, consent or agreement, like the one here in controversy, *drains for the mutual benefit of all the lands interested therein.* Section 2 provides how other parties may join. Section 3 prohibits any of the parties interested therein from filling up the same, or in any manner interfering with the same so as to obstruct the flow of water therein, without the consent of all the parties, and provides that "the license, consent or agreement of the parties herein mentioned need not be in writing, but shall be as valid and binding if in parol as if in writing, and may be inferred from the acquiescence of the parties in the construction of such drain." Section 4 provides that the right to revoke any parol license before granted to construct such drain upon, across or over the lands of any party shall be exercised, and suit commenced to enforce the same, within one year from the time the act took effect, and if not thus exercised and suit brought within one year then such party shall be forever barred from thereafter revoking such license.

It is admitted that plaintiffs in error were the owners of the dominant and the defendant in error of the servient

heritage; that the former and the grantors of the latter jointly, and by mutual consent and agreement, excavated the ditch for the drainage of these lands of the several owners, and for several years maintained the ditch and kept it open and in repair, and that the license was not revoked within the time fixed by the statute. Under these facts and by virtue of the statute this license became irrevocable, and the question is, was it converted into an easement?

An easement is an incorporeal hereditament, and consists of a right in the owner of one parcel of land, by reason of such ownership, to use the land of another for a special purpose not inconsistent with a general property in the owner. (2 Washburn on Real Prop. chap. 1, sec. 3, pl. 1.) It is always distinct from the occupation and enjoyment of the land itself. It is a liberty, privilege or advantage in land distinct from the ownership, and rests upon grant or prescription. (1 id. chap. 12, sec. 2, pl. 1.) Except in what are known as common law dedications, parol gifts of land, or of easements therein, are ineffectual, it being elementary law that the title to lands can not be transmitted *inter vivos* except by deed or its equivalent, and that easements or other incorporeal hereditaments cannot be created by parol, but only by grant, or by prescription, whereby a conclusive presumption of a previous grant is raised. (*Lake Erie and Western Railroad Co.* v. *Whitham,* 155 Ill. 514; *Forbes* v. *Balenseifer,* 74 id. 183; *Tinker* v. *Forbes,* 136 id. 221; *Village of Dwight* v. *Hayes,* 150 id. 273.) A license is an authority to do a particular act or series of acts upon another's land without possessing any estate therein, and may be created by parol, and is generally revocable at the will of the licensor. It will be noticed that the statute declares that such a continuous drain over the lands of several owners, constructed, as this was, by mutual agreement, "shall be held to be a drain for the mutual benefit of all the lands so interested therein," and forbids the filling up of such drain, or the

obstruction of the flow of water therein, without the consent of all the parties in interest. The defendant in error had one year after the statute took effect in which to revoke his license or agreement under which this ditch was excavated, but failing to exercise this privilege the statute became applicable and the rights of the parties fixed. We are of the opinion that by force of the statute the license has been converted into a perpetual easement.

The effect of the statute is to make such a ditch so constructed an encumbrance, so to speak, upon all the lands through which it passes. The right to it and its maintenance is an interest in the land itself, and passes with the land by conveyance, devise or descent, for the statute declares that it shall be held to be for the benefit of all the lands, and the obstruction to the flow of water is prohibited, and it is in effect made perpetual. In *Wilson* v. *Bondurant*, 142 Ill. 645, it was held that this statute does not restrict or abridge the rights of drainage as they existed at common law, but that its sole purpose is to enlarge those rights. By the common law the owner of the dominant heritage has the right to have the surface waters flow from his land over the lands below as they would naturally flow, and as the statute in question was intended to enlarge the rights of drainage, it would seem that it was the intention of the legislature, from the language employed, that in cases where the owners of such lands, by agreement among themselves, construct a channel through their several tracts to carry off the water, the right to maintain the same and to have the water flow through it unobstructed should be a permanent one, and pass with the land as an incident of ownership. In *Totel* v. *Bonnefoy*, 123 Ill. 653, where an easement, by prescription, in the use of a ditch over the land of another for the flowing of water was claimed, this court held that the easement did not exist where it appeared there had not been twenty years' user of the same ditch; and it is apparent that it was the intention of the General Assem-

bly to make some changes in the law in respect to drainage. In *Chronic* v. *Pugh, supra,* it was held that under sections 4 to 10 of the "act to provide for drainage for agricultural and sanitary purposes," etc., approved June 27, 1885, where a land owner had acquired the right, by proceeding under the statute, to put in a tile-drain across the land of another to drain his land into a natural watercourse, he acquired an easement in such land which was a freehold estate.

We are of the opinion that a freehold is involved in the case at bar also, and the motion to dismiss will be overruled.

There remains the further question whether the right to maintain the drain over the close of defendant in error includes also the right to enter upon his close for the purpose of repairing or cleaning out such drain. The right to the use of the drain must, in reason, be something more than the mere right to have the surface water flow over the lower land. It is the right to have the water collected in the drain on the upper land flow through the drain on the lower land, and includes the right to have such drain remain in its former condition and fit for the use intended.

It is a well settled rule that the grant of an easement is accompanied by such secondary easements as may be necessary for its enjoyment. (*Alexander* v. *Tolleston Club,* 110 Ill. 65; *Willoughby* v. *Lawrence,* 116 id. 11.) As a general proposition, whoever has an easement in or over another's land has the right to do all such things as are necessary to preserve the easement,—that is, he may keep it in repair, and has the right of access to make the necessary repairs. (Washburn on Easements, chap. 6, sec. 1, pl. 1; 6 Am. & Eng. Ency. of Law, 149.) The right to keep in repair a way is fully established. The cases on the subject of obstructions erected in or to water-courses or drains are quite numerous, but there seem to be few authorities in regard to the right of entering upon the land of the owner of the servient heritage and removing ob-

structions occurring through natural causes in an arti-
ficial channel. In *Chapman* v. *Thames Manf. Co.* 13 Conn.
269, it was held that obstructions in an artificial channel,
through which there exists the prescriptive right to flow
the waters of a lake, though occasioned by natural causes,
may be removed by the persons whose lands are over-
flowed, without there being any right on the part of the
owner of the channel to object. In *Roberts* v. *Roberts*, 55
N. Y. 275, the former owner of a tract of land had drained
the upper part of it, by means of a ditch, into the lower
part, and afterwards conveyed the tract in two parts to
different persons. In an action by the owner of the upper
tract against the owner of the lower tract the court said:
"If the ditch got out of repair by reason of floods or wash-
ing away its banks, or otherwise, it was the legal right of
the plaintiff to repair it, so as to restore it to its original
condition and make it subserve the purpose which it origi-
nally effected,—of carrying off the water of the stream.
He was entitled to have the ditch kept up as it was when
he purchased, and to keep it in that condition, and, if
necessary, to enter upon the defendant's lands to make
repairs, doing no unnecessary injury." In *Liford's case*, 11
Rep. 46, it is said: "The law giveth power to him who
ought to repair a bridge to enter into the land, and to him
who hath a conduit within the land of another to enter
the land and mend it when cause requireth, as it was re-
solved in 9 Edw. IV, 35," where it was held that the right
to scour and amend a trench was incident to a grant of a
right to dig it in another's land for the purpose of draw-
ing water through the same; and the same doctrine is
sustained in *Peter* v. *Daniel*, 5 C. B. 568. Washburn on Ease-
ments, chap. 6, sec. 1, pl. 4.

It would seem, therefore, that the common law an-
nexes to the easement of a drain in another's land the
right to go upon such land and clean out or repair such
drain without doing unnecessary injury to the land. Nor
can we conclude that the statute has taken away this

174—40

right. Section 76 of the act of June 27, 1885, known as the "Farm Drainage act," (Laws of 1885, p. 77,) provides that where two or more parties owning adjoining lands which require a system of combined drainage have, by voluntary action, constructed ditches which form a continuous line, the several parties shall be liable for their just proportion for such repairs and improvements as may be needed therefor, the amount to be determined on the same principle as if these ditches were in an organized district. It then directs that when such repairs or improvements are not made by voluntary agreement, any of the parties may "petition for the formation of a drainage district to include the lands interested in maintaining these ditches." It also provides that the ditches shall be taken as a dedication of the right of way, and the construction and joining as the consent of the several parties to be united in a drainage district. The principal object of this section seems to be to provide a way to compel the different land owners to pay their proportion of the expense of repairs and improvements. In the case at bar it is not, of course, claimed by plaintiffs in error that they were authorized to make improvements or to do anything more than was necessary to clean out the ditch and maintain it in its original condition; nor is there any question of apportioning the expense of cleaning out the ditch. The section of the statute last mentioned does not purport to take away the common law right possessed by plaintiffs in error to preserve their easement, nor is it inconsistent with its exercise. It would be unreasonable to say that the statute means that in such a case the land owners should form a drainage district before they could, at their own expense, remove a little earth and rubbish from a ditch, which, without the statute, they would have the right, at common law, to remove. In cleaning out the ditch they would, of course, be liable for any abuse of their right, but it is not shown or claimed in the case at

bar that there was any unnecessary damage done, or any-
thing more than to clear the ditch from obstructions.

The plea was a good defense, and the demurrer should
have been overruled. The judgment is reversed and the
cause remanded.	*Reversed and remanded.*