William G. Snyder *et al.*

*v.*

Eugene B. Baker *et al.*

*Opinion filed June 14, 1906.*

1. Drainage—*the act of 1889 relates only to private rights in ditches.* The act of 1889, relating to drains constructed by mutual consent, and which converts parol licenses, if not revoked within a stated time, into perpetual easements, relates only to private or individual rights in ditches or drains constructed by mutual license or agreement, and not to ditches or drains of an organized drainage district.

2. Same—*effect, upon mutual drains, of organization of drainage district.* The organization of a drainage district embracing lands in which ditches or drains have been constructed by mutual agreement places the control of the system of drainage in the hands of the commissioners, and any action for damages for the filling of an open ditch in conformity with the plans of the commissioners lies against the commissioners, and not against the land owner who filled the ditch.

Writ of Error to the Circuit Court of Piatt county; the Hon. W. C. Johns, Judge, presiding.

W. G. Cloyd, and M. R. Davidson, for plaintiffs in error.

Reed & Reed, and Eckhart & Moore, for defendants in error.

Mr. Justice Cartwright delivered the opinion of the court:

Eugene B. Baker and Emma J. Vaughan, the defendants in error, filed their bill in the circuit court of Piatt county against William G. Snyder and Thomas Blackwell, the plaintiffs in error, praying for a mandatory injunction to compel plaintiffs in error to remove obstructions from a ditch on their lands. The bill alleged that the ditch was constructed.

more than fifteen years prior to the spring of 1903 by the mutual license, consent and agreement of the owners of lands described in the bill; that on April 22, 1886, the defendant Snyder and other owners of adjoining lands petitioned the commissioners of highways to organize a drainage district including the lands interested in maintaining the ditch; that the district was organized and designated as "Drainage district No. 2 of the town of Unity;" that the commissioners adopted a plan of drainage providing for a tile drain, located in places at the bottom of the open ditch and at other places on different lines; that it was understood by the commissioners and land owners that the ditch was to remain open, and that the defendants, in the spring of 1903, filled up the ditch on their lands without the consent of all the parties interested, causing the water to stand on the lands of complainants and damaging their crops, grass and herbage.

The answer admitted that the ditch was originally constructed by agreement between the defendants, but alleged that it was so constructed upon the expressed condition that as soon as the defendants were able to provide tile the ditch should be changed to a tile drain and filled up. The answer further alleged that after the construction of the ditch, Dennis Ball, who then owned part of the lands now owned by the complainant Vaughan, was permitted to connect a drain on his land with the open ditch upon the same condition as to substituting a tile drain; that the ditch on the land of the complainant Vaughan has for many years been filled up and abandoned; that the drainage district was organized and the control of the ditch passed to the commissioners, who provided for a system of tile drainage following the direction of the open ditch; that said commissioners laid a tile drain across the land of the defendant Blackwell, beginning at the south-east corner of said land in the open ditch and running to the north line of said land, and from thence across the land of the complainant Vaughan; that the tile were laid for the greater part of the distance in the open ditch and for the rest

of the way in a more direct route to the northern terminus; that in 1903 the commissioners provided for additional tile drainage near to and on a line with the original tile laid by them over the same land, terminating at the same outlet, for the purpose of furnishing adequate tile drainage; that with the consent of the commissioners the open ditch was then filled, and that the complainant Baker was one of the commissioners and had full knowledge of the filling of the ditch and acquiesced in it. The answer denied that it was the plan of the commissioners to keep the ditch open, and denied that the natural course of drainage from complainants' lands was over the lands of the defendants, and insisted that the natural flow of water was in the opposite direction, to the north and north-west.

The evidence was taken before a master in chancery, and upon consideration of the same the court granted the relief prayed for and enjoined the defendants from continuing the obstruction of the ditch and ordered them to restore the open ditch. The ground for praying and granting relief was, that the complainants had an irrevocable perpetual easement over the lands of the defendants for the maintenance of the ditch, and for that reason a writ of error was sued out from this court to bring the record here for review.

The facts proved are as follows: The defendant Blackwell owns the west half of the south-east quarter of section 15, town 16, range 6, in Piatt county, and along the south line of the tract there is a highway running east and west; the defendant Snyder owns the west half of the north-east quarter of said section; the complainant Vaughan owns the north-west quarter of said section, and the complainant Baker owns the east half of the north-east quarter of section 16. Some years before 1886,—probably about 1877,—the defendants Blackwell and Snyder constructed the open ditch. It commenced at the south-east corner of the land of Blackwell, where it connected with a ditch in the public highway, and ran north-westerly across the eighty acres and thence

upon the lands of Snyder. Tile was then expensive and diffi-
cult to obtain, but it was agreed that whenever they were
able, the open ditch was to be changed to a tile drain. Dennis
Ball, who then owned part of the lands now owned by com-
plainant Vaughan, applied to Snyder for permission to drain
into the ditch, and Snyder and Blackwell agreed to it on
condition that Ball should assist in deepening and enlarging
the ditch and that tile should be substituted when they were
able. Somewhere between 1882 and 1885 A. N. Carroll,
who then owned part of the lands now owned by Vaughan,
connected with the ditch in the same way. On the Vaughan
land there is a pond in a natural basin, with no outlet, and
south of the pond there is a ridge, through which the ditch
was much deeper than either above or below, and it is ques-
tionable whether the natural course of drainage is over de-
fendants' lands. That direction, however, was the nearest
way to reach any ditch that would carry off the water. In
April, 1886, a petition was signed by Snyder, Carroll and
Ball praying for the formation of a drainage district by user,
under section 76 of the Farm Drainage act of 1885. (Laws
of 1885, p. 77.) That section provided that where two or
more persons owning adjoining lands requiring a system
of combined drainage had by voluntary action constructed
ditches which formed a continuous line or line and branches,
and where necessary repairs and improvements were not
made by voluntary agreement, a drainage district might be
organized, including the lands interested in maintaining the
ditches. The petition stated that ditches had been constructed
by the voluntary action of the owners across the several
tracts of land described therein and that the ditches were not
kept in repair by voluntary agreement, and it described the
lands to be included in the proposed district, embracing the
lands of the parties to this suit. Blackwell refused to sign
the petition, but the district was organized and the commis-
sioners took charge of the drains and drainage therein. They
deepened and improved the ditch in the public highway south

of Blackwell's land to a depth of five or six feet and a width of twelve or fifteen feet at the top, and that ditch carried the water to Lake Fork. On Blackwell's land the ditch was about three feet deep and about eight or ten feet wide at the top. The commissioners laid a line of tile drain in the general direction of the open ditch from the highway north. Part of the distance twelve-inch tile was laid in the bottom of the open ditch, and at other places the open ditch was abandoned and the tile was laid in a more direct line. The open ditch remained as it was, and filled up to some extent, and no work was done to keep it open. Other lines of tile have been laid in the general course of the drainage toward the highway over the lands of complainants and defendants, and a well was placed in the open ditch connecting with the tile and forming an obstruction to the flow of water in the ditch, although the water could flow around the well to some extent. In 1902 the commissioners let a contract for additional tiling, and in the spring of 1903 that work was done. In connection with that work the twelve-inch tile in the open ditch was taken up for thirty-six rods north from the highway and eighteen-inch tile was laid in its place. The complainant Baker, the defendant Blackwell, and J. F. Snyder, a brother of the defendant Snyder, were the commissioners. The open ditch on the land of the complainant Vaughan had been filled up for years, and after the additional tile was laid in the spring of 1903 the ditch was filled on the lands of the defendant Blackwell and the work was paid for by the commissioners. Snyder then filled the ditch on his land. The complainant Baker was at the ditch when it was being filled up and gave some advice as to the best way of filling it, but the work was paid for by an order drawn by the other commissioners. No record was made of the action of the commissioners or the plan of drainage. After the ditch was filled there was a storm of unusual severity, and the surplus water would have gone off the land of the complainant Vaughan more rapidly if the ditch had been left open, but

the pond being in a natural basin it was never thoroughly drained, and crops were drowned out there in wet seasons and times of heavy rain.

The claim of the complainants rests entirely upon the provisions of the act of 1889, concerning drains constructed by mutual license, consent or agreement by the owners of adjoining lands. (Laws of 1889, p. 116.) That act provides that none of the parties interested in a ditch or drain constructed by mutual license, consent or agreement of the owners of adjoining or adjacent lands shall, without the consent of all the parties, fill the same up or in any manner interfere with the same so as to obstruct the flow of the water therein, and it declares such a ditch or drain to be a drain for the mutual benefit of all the lands interested therein. This ditch had been constructed many years before that act was passed, and the drainage district, including all the lands benefited by the ditch or interested in its maintenance, had been organized three years before that time. The act converted parol licenses, if not revoked within a limited time, into perpetual easements, and secured to the owners of land interested in the joint ditch individual rights for the protection of their easements. (*Wessels* v. *Colebank,* 174 Ill. 618; *Ribordy* v. *Murray,* 177 id. 134; *Hunt* v. *Sain,* 181 id. 372; *Dorman* v. *Droll,* 215 id. 262.) But the act was not designed and did not have any operation upon a drainage district or the ditches or drains therein. By the organization of the drainage district the ditches and drains therein were placed in the charge of the drainage commissioners. They were to examine the lands, have plats and surveys made, let contracts for work, determine on the system of drainage, utilize existing drains where it could be advantageously done, and have general charge of the drains, and were required by section 76 to make open ditches tile drains when practicable. It is not the right of a land owner in a drainage district to control the system of drainage therein, or to compel another land owner in the district to keep a ditch or drain under the control of

the commissioners open for his benefit. The question what system of drainage is to be adopted is committed to the judgment of the commissioners, and if their duties are neglected the remedy is against them, and not against individuals who conform to the plans and directions of the commissioners. If there was any right of action in this case against the defendants for filling the open ditch it was vested in the drainage commissioners or the district, and not in complainants, and if the complainants had any right it was against the drainage commissioners. The act of 1889 relates only to private and individual rights in ditches or drains constructed by mutual license, consent or agreement, and has no reference to the ditches or drains of an organized drainage district. That act is the sole reliance of the complainants, and it follows that the decree is erroneous.

The decree is reversed and the cause remanded.

*Reversed and remanded.*