## PYOTT ET AL. *v.* THE STATE.

[No. 21,060.   Filed February 26, 1908.]

1. EASEMENTS.—*Drains.*—*Railroads.*—A railroad company which, thirty years before the commencement of the case at bar, constructed a culvert under its track for the carrying away of the surface-water above the track, and which company, at the same time, in order to convey the water through such culvert, with the owner's knowledge and acquiescence, cut an outlet through such owner's premises for a short distance, and maintained such outlet for thirty years, owns an easement in such outlet. p. 121.

2. SAME.—*Prescription.*—*Title.*—In title by prescription, a grant is conclusively presumed; and such a title is as good as one by deed. p. 122.

3. SAME.—*Drains.*—*Rights Concerning.*—The owner of a drainage easement has the right to enter the owner's premises, doing no unnecessary damage, and to remove obstructions thereto in order to prevent any injury therefrom. p. 122.

4. SAME.—*Obstructions.*—*Entry.*—*Notice.*—*Trespass.*—The owner of an easement, without request for the removal of an obstruction placed thereon by the owner of the land, may enter and remove such obstruction; and a conviction for trespass in going upon such land cannot be upheld. p. 122.

From Clinton Circuit Court; *Joseph Claybaugh,* Judge.

Prosecution by the State of Indiana against Clinton Pyott and others. From a judgment of conviction, they appeal. *Reversed.*

*Guenther & Clark* and *John B. Cockrum,* for appellants.

*James Bingham,* Attorney-General, *A. G. Cavins, E. M. White, H. M. Dowling, Joseph Combs* and *George V. Moss,* for the State.

HADLEY, J.—Running across the farm of the prosecuting witness, Combs, from the northwest to the southeast, are two parallel ridges or elevations. The track of the Lake Erie & Western Railway Company, running east and west, and constructed in 1875, crossed the two ridges at a point about thirty rods north of where the ridges drop into the lowlands or bottom lands of Wild Cat creek. At the point

of intersection, the railroad is practically on a level with
the lowest part of the valley or depression intervening be-
tween said ridges; the railroad cut through the west ridge
being seven feet deep, and through the east ridge fourteen
feet deep.  The summits of the ridges are from three hun-
ded to four hundred feet apart, and extend from one-half
to three-fourths of a mile northwesterly from the railroad.
All the rain and snow not absorbed by the ground, that
falls on the facing slopes of the ridges, finds its way to the
lowest line of the intervening valley, or swale, and flows
along the same southeasterly to Wild Cat creek.  It is fed
by no spring, and has no source of water but the rains and
snows.  North of the railroad there is no fixed channel with
defined bed and banks, but the field through which the swale
runs has been in cultivation many years, and the small chan-
nels cut out from time to time by the descending waters
become obliterated by the plow, so that nothing remains but
an indistinct, yet noticeable, lower line where the waters
flow.  No water runs down the swale except after a heavy
rain or a snow storm, the volume depending wholly upon
the amount of the excess falling, and after the same has been
discharged the swale becomes and remains dry until an-
other heavy rain.  To carry off the waters coming down
through the swale across the railroad a culvert was put in
by the railway company in 1875, and the water collected and
conducted to the culvert over the north side of the right of
way in a ditch three feet wide at the top, two feet deep, and
one and one-half feet wide at the bottom.  The culvert was
put in at right angles with the railroad, or on a line
due north and south, while the natural flowage of the
water across the right of way was in a southeasterly
direction.  This construction placed the south end of the
culvert fifty feet west of the natural line of flowage, and in
much higher ground.  The railroad at this place is on a
heavy downgrade to the east for some distance east of the
culvert, sloping at the rate of one and one-quarter feet to

every one hundred feet. To furnish an outlet for the water running through the culvert, the railroad company in 1875 cut a ditch in a southeasterly direction, throwing the dirt therefrom on the east side, to the old line or natural watercourse, traversing not only its own right of way, but also about twenty feet of the land now owned by the prosecuting witness. One Moore, who was then the owner of and resided upon the land lying on both sides of the railroad, and who was a grantor of Combs, had knowledge, at the time the work was in progress, of the construction of the culvert and the outletting ditch on his land south of the railroad, and made no complaint or objection thereto. Where this outlet crossed the south right of way fence the ground was seven feet higher than the side ditches of the railroad. The side ditches of the railroad were a few inches lower than the surface of the ground on the north side of the right of way.

In May, 1906, the prosecuting witness, Combs, built a dam across the ditch constructed by the railroad company in 1875 upon the land now owned by him, which dam was immediately south of the right of way fence, and high enough to set the water back on the right of way, and cause it to flow eastwardly through the side ditches of the railroad, thereby flooding and occasionally injuring the track. From 1875 to 1906 the railroad company, an indefinite number of times, and as often as it was necessary, cleaned out the outlet to the culvert without objection from Combs or his grantors. The railroad company sent the defendants, a gang of section men, onto Combs's premises to remove the dam so constructed by him, and, while engaged in its removal, the prosecuting witness ordered them to leave his premises, which they refused to do. Whereupon an appeal was had to the statute which reads thus: "Whoever, * * * being unlawfully upon the enclosed * * * land of another, shall be notified to depart therefrom by the owner, * * * and shall thereafter * * * neg-

lect or refuse to depart therefrom, shall be guilty of a misdemeanor, and on conviction, shall be fined not less than $5 nor more than $50.'' §2280 Burns 1908, Acts 1905, pp. 584, 670, §388. Upon affidavit appellants were found guilty, and upon the overruling of their motion for a new trial they appeal.

The discussion has centered on the question whether in constructing the dam across the ditch at the point where the same enters upon his land, John E. Combs, the prosecuting witness, was ''fighting the common enemy''—storm water—or obstructing a natural watercourse. The view we have taken of the case, however, renders the question discussed of no importance.

It is shown, without contradiction, that, in providing for the escape of the waters that descended against the railroad, in 1875, thirty-one years before the commencement of this prosecution, the railroad company made a culvert under its track, and a ditch therefrom to carry the water from the culvert to the line, or course, where it had flowed from time immemorial, and from which a slight deviation has been made by the location of the culvert; that in reaching the old course the ditch was dug across the south part of the right of way, and on Combs's land for a distance of twenty feet; that the railroad company opened the ditch to avoid obstructing the flow of water, and, with the knowledge and acquiescence of John E. Combs and his grantors, has for thirty-one years continuously, exclusively, and uninterruptedly maintained the ditch, keeping it cleaned out and effective under a claim of right to do so. These facts are sufficient to establish in the railroad company an easement, or prescriptive right to maintain said ditch on the land of the prosecuting witness Combs, in place and capacity as the same was constructed by it in 1875, and maintained prior to its obstruction by said dam. *Terre Haute, etc., R. Co.* v. *Zehner* (1906), 166 Ind. 149; *Southern Ind. R. Co.* v. *Norman* (1905), 165 Ind.

126; *Mitchell* v. *Bain* (1895), 142 Ind. 604; *Davis* v. *Cleveland, etc., R. Co.* (1894), 140 Ind. 468; *Roots* v. *Beck* (1887), 109 Ind. 472; *Snowden* v. *Wilas* (1862), 19 Ind. 10, 81 Am. Dec. 370; Jones, Easements, p. 642; Gould, Waters (2d ed.), p. 611; 2 Farnham, Waters and Water Rights, p. 1796; Angell, Watercourses (7th ed.), p. 543.

In title by prescription a grant is conclusively presumed, and such a title is as valid and as indefeasible as a title by deed, and embodies the same attributes of ownership. This includes the right to go upon the premises of another to remove that which constitutes a source of injury, or a nuisance, doing no wanton or unnecessary damage, the right to enter and remove being allowed, not because of any injury it may have done, but to prevent the injury it may do. The right is preventive and not compensatory. Cooley, Torts (2d ed.), *46; Wood, Nuisances (2d ed.), p. 804.

To have the water thown back by the dam, wrongfully constructed over the right of way, and driven in occasional torrents eastwardly down the side ditches of the railroad, to the serious injury of the track, as shown by the evidence, was a nuisance that the railroad company had the right to abate. A distinguished author, in treating this subject, says: ''The owner of the dominant estate may enter upon the servient estate, and remove any obstructions wrongfully placed there to the detriment of his easement in the same. If these are created by the owner of the servient tenement, the one entitled to the easement may make such entry without any previous request to have them removed.'' 2 Washburn, Real Prop. (4th ed.), p. 369. To the same effect it was said by this court in *State* v. *Flannagan* (1879), 67 Ind. 140, 146: ''Nuisances created by an act of commission, in defiance of the rights of those whom such nuisances injure, are enumerated as exceptions to the rule requiring notice to the party committing them before abatement.'' See, also, *O'Brien* v. *Murphy* (1905), 189

Mass. 353, 75 N. E. 700; *Keplinger* v. *Woolsey* (1903), 4 Neb. (unofficial) 282, 93 N. W. 1008; *McEwan* v. *Baker* (1901), 98 Ill. App. 271; *Adams* v. *Barney* (1853), 25 Vt. 225.

The easement was established by the evidence. Combs wrongfully constructed the dam to the injury of the railroad company. The company had the right to remove it. Appellants having entered Combs's premises as the representatives of the railroad company for the sole purpose of abating the nuisance, had a right there, and the right to remain until the work was accomplished, doing no unnecessary damage to the premises. The conviction of appellants was therefore erroneous.

Judgment reversed and cause remanded, with instructions to grant appellants a new trial.