Argued April 10, modified October 16, 1928.

C. BOWMAN *v.* CLYDE BRADLEY.

(270 Pac. 919.)

For appellant there was a brief over the names of *Mr. Henry E. Perkins* and *Mr. R. C. Groesbeck,* with an oral argument by *Mr. Perkins.*

For respondent there was a brief and oral argument by *Mr. J. H. Carnahan.*

McBRIDE, J. There are a few facts which are not disputed, and which, as a preliminary to the disputed facts, we will mention. First, that the plaintiff bought this land in 1910 and that at that time there was upon the grounds occupied by the ditch in dispute a small ditch, probably a foot in depth, which was used by plaintiff's grantors for

the purpose of irrigation and drainage; that plaintiff used that ditch for like purposes until 1912 when a change in the county road rendered it ineffective for drainage purposes without deepening it; and second, that plaintiff to adjust the ditch to the new conditions deepened the ditch to its present dimensions which is about three and one-half feet wide and four feet deep, and continued to use it to a greater or less extent for the purpose of draining his land until the fall of 1925, when defendant filled it in, rendering it entirely useless for the purpose of drainage and, in effect, destroying it.

These facts are not seriously disputed. We are satisfied from the evidence that plaintiff has no other way of draining his land, except by incurring an enormous expense, and that the natural and most practicable way to conduct his drainage is through the ditch in question. If the facts testified to by plaintiff are correct, his use of the ditch from the beginning was a trespass, and he could have been ousted at any time within the period of ten years from his first use thereof. If, on the other hand, the use of the ditch was permissive, the use to continue so long as plaintiff complied with certain conditions prescribed by defendant, his right to use would terminate whenever he neglected or refused to comply with such conditions. Taking the testimony as a whole, we are inclined to the opinion that the use was not permissive but adverse. The plaintiff testified, in substance, that he neither asked nor received permission for the use of the ditch, but finding a small ditch on the premises when he went there he assumed possession of it for the purposes for which he needed it; that in 1912, when changed conditions made it

necessary to deepen the ditch, he did so at consider-able expense without consulting defendant in regard to it, and to an extent that amounted to almost the construction of a new ditch; that from year to year he kept it clean and open at his own expense and used it as occasion required for the drainage of his premises until 1925 when the defendant closed it up. His every act was such as indicated an assertion on his part of a right to use it for his own purpose to the same extent that he would or might have done if it had been on his own land. Every time he deepened the ditch, every time he cleaned it out and every time he turned his drainage through it, he was in effect asserting his right to use it just as effectually as if he had proclaimed it from his housetop. The claim of defendant, that the use was permissive upon the condition that he should do certain acts with respect to it, is not sustained by the preponderance of the testimony,—in fact, by no testimony except his own. We have on the one side the actual and undisputed fact that for thirteen or fourteen years the plaintiff did all the work, and it was not inconsiderable, in constructing, cleaning and maintaining the ditch, and using it seasonably for the purpose of draining his property the same as the average owner does with his own property. His testimony and that of his son is to the same effect. In fact, all the witnesses agree upon this except the defendant, who says that for two years the plaintiff did not use the ditch. Another witness testified that there was very little water com-ing down in 1924 and 1925 during the irrigating season, but the evidence satisfies us that there was a quantity of water sent down by plaintiff during the irrigating season, and that later from some cause,

probably from fall weather conditions and pretty generally, a considerable quantity of water came down through the borrow-pit along the county road which, unless drained by the ditch in question would cause, and did cause, injury to plaintiff's premises. It seems hardly reasonable, even from the standpoint of defendant's testimony, that he would put up with the use of the ditch by plaintiff for a period of twelve years when, as he claims, plaintiff's negligent use of the ditch was washing away his soil and shoaling his slough, and suddenly conclude to fill it up when there was little or no water to do damage. If plaintiff was entitled to use the ditch for drainage purposes at all, he was entitled to use it not only as a means to protect his lands from drainage originating on his own land, but also from the consequences of water which came down from above; and the fact that, after a prescriptive right had attached, the water, either from a scarcity of water or seasonal drought, did not come down in such quantities as to render the use of the ditch to its usual capacity necessary, would not be construed as an abandonment, unless the lack of use was continued for a period of ten years, or at least long enough to indicate an intention on the part of the owner of the dominant premises to discontinue its use permanently: *Carlisle* v. *Cooper,* 4 C. E. Green (19 N. J. Eq.), 256; *Williams* v. *Nelson,* 23 Pick. (Mass.) 141 (34 Am. Dec. 45); *White* v. *Crawford,* 10 Mass. 191; *Corning* v. *Gould,* 16 Wend. (N. Y.) 531; *Cuthbert* v. *Lawton,* 3 McCord (S. C.), 194.

▮ It is further contended by appellant that, by reason of the fact that other persons also used the ditch to some extent, plaintiff's possession was not of such an exclusive character as to ripen into an ease-

ment, arguing that the possession and use must be exclusive, and the fact that other neighbors and the defendant himself drained into it, so far destroyed the exclusive character that plaintiff's use cannot be such as became a matter of right. The weight of authority is to the contrary. It should be borne in mind that plaintiff is not claiming title in fee to the ditch, its bed or banks, or to the ground over which it is constructed. His claim is for a right to flow water through it. A right of way, so to speak, by which he may convey the surplus water on his farm to Lost River. In principle, this differs from no other easement across the land of another.

A may have a right of way across the land of B in order to reach his own land, and C may also use the same route to get to his particular tract, while B as the general owner of the lands may also use it and neither of them be incompatible with the rights of the other, and each may prescribe separately for his own right if they do not conflict: *Silva* v. *Hawn,* 10 Cal. App. 544 (102 Pac. 952); *Schmidt* v. *Brown,* 226 Ill. 590 (80 N. E. 1071, 117 Am. St. Rep. 261, 11 L. R. A. (N. S.) 457). Other cases are cited by counsel but these suffice. The principle is well established.

■ So far we hold that the findings and decree of the Circuit Court are correct and affirm it, but there are some other matters to which we will advert. We hold that plaintiff has a right to use the ditch for the purpose of drainage, but the maxim that one should so exercise his own right as not to do unnecessary damage to another should be applied to the exercise of this right. In the inception of his right, plaintiff set an example of the manner in which it should be decently exercised by building a flume and a drop-box at the end where it reaches the slough. If

this had been maintained, there would have been little for defendant to have complained about, but it was more or less neglected. If the use of the ditch is of any value to plaintiff it should be worth taking care of properly. Plaintiff, in his complaint, claims the right to use a ditch three and one-half feet wide and four feet deep, and this we give him, but, in so doing, we require him to confine himself to the terms of his prescription. It is only fair that hereafter he shall so use it as not to materially enlarge its width by unnecessary caving in of the sides, which, in our opinion, can be easily prevented, and in common justice he should be required to replace the ineffective flume and drop-box with a good substantial one sufficient to carry off the water and not a mere contraption liable to be washed out by a rise in the water.

The decree will be modified so that defendant will be compelled to reopen the ditch to the extent that it existed before he filled it up and within sixty days thereafter the plaintiff will be required to put in a flume and box of the character above indicated and from time to time contribute the labor and expense necessary to prevent any shoaling of the mouth of the slough which may be hereafter occasioned by debris from the ditch in question.

We believe that the arm of equity is long enough to compel a compliance by both parties with these conditions and to render such relief efficacious. Either party may apply to the Circuit Court at the foot of this decree for further equitable aid in the premises.

As to the reopening of the ditch and damages, the decree is affirmed as above mentioned. Neither party will recover costs in this court.          AFFIRMED.

RAND, C. J., and ROSSMAN and COSHOW, JJ., concur.