CHESTER A. NIXON et al., Appellants, v. VERNA R. WELCH et al., Appellees.

No. 46888.

OCTOBER 15, 1946.

REHEARING DENIED JANUARY 17, 1947.

Roy E. Havens, of Logan, and DeVere Watson, of Council Bluffs, for appellants.

Welch & Welch and Wm. P. Welch, all of Logan, for Verna R. Welch and Wm. P. Welch, appellees.

Wright & Kistle, of Council Bluffs, for Trustees of the Estate of G. M. Dodge, appellees.

Harold E. Hanson, of Logan, for William Walters, K. L. Brundige, and J. C. Hammitt, County Supervisors of Harrison County, appellees.

MULRONEY, J.—Sections 23 and 24 in Cincinnati township, in Harrison county are separated by a north-and-south county road. Plaintiffs Nixon and Bierring own land along the east side of the road in Section 24 and the defendant Verna Welch owns land along the west side of the road in Section 23. Plaintiffs sued Verna Welch and her husband and the board of su-

pervisors alleging that the surface water drained south across the west part of the Nixon land onto the Bierring land and thence, until the year 1940, westerly through a culvert under the road onto the Welch land and through an open ditch extending in a southwesterly direction across the Welch land to a lake along the west side of the Welch land. The petition alleged that in 1940 the board had caused the road to be graded and the culvert removed and that the ditch across the Welch land had become filled with soil; that the culvert and the ditch across the Welch land were all a part of an established drainage system known as the Bowman ditch, established in 1878 by the joint action of the owners of the land in Sections 23 and 24 and the owners of other lands lying to the north of Nixon's land. The petition claimed an easement in favor of plaintiffs for the flow of surface water across the highway and across the Welch land and the right to have the culvert restored and the ditch across the Welch land cleaned out and maintained as an outlet. The petition alleged damages by reason of the damming up of the surface water and the prayer was for a mandatory injunction to compel the board to restore the culvert and to require the defendant Verna Welch to permit the ditch across her land to be cleaned out and maintained as an outlet for the surface water flowing from plaintiffs' land and for general equitable relief.

The portions of Verna Welch's answer that are responsive to the claims of plaintiffs deny that the Bowman ditch was ever "constructed under the proceedings of the Board of Supervisors of Harrison County" and assert the records merely show a proposal for a ditch that was abandoned and never maintained; that there never has been any drainage, natural or artificial, of the surface water from plaintiffs' land across the road and across the Welch land and that plaintiffs' land is in fact lower than the Welch land. The board of supervisors adopted the Welch answer and further alleged their predecessors in office exercised a sound discretion in not constructing the culvert. The defendants trustees of the estate of G. M. Dodge are the holders of a mortgage on the Welch land and their counsel stated in open court they would abide by any decree without pleading.

The trial court heard much evidence of witnesses who had been familiar with this land for many years. Some of them had

known the land for more than half a century, some for forty years, and others for somewhat lesser periods of time. It was all to the effect that a swale extended from the northern boundary of Nixon's land in a southwesterly direction to the old culvert site near the southwestern corner of the Bierring land and thence across the Welch land to the lake; that this swale was the watercourse that drained the Nixon and Bierring land, though it perhaps did operate with decreasing efficiency as the years went on and the ditch gradually filled in. The records with respect to the old Bowman ditch were introduced and this swale followed the course of that ditch. The testimony of the witnesses was well supported by photographs showing the line of the depression and by the county engineer. There was some testimony that at the time of trial some of the water pockets on the Nixon land would, in times of heavy rainfall, drain north into a road ditch along paved Highway 30, which runs along the north side of the Nixon land, but the evidence did establish that the natural drainage of the west part of Section 24 was in a southwesterly direction and that the Welch land was slightly lower than the plaintiffs' land. The record with respect to the Bowman ditch shows proceedings commencing in 1877, when the respective owners of the land petitioned the board for its establishment; the letting of the contract, and the assessments to pay for its construction. One witness, William Sproul, who had been familiar with this land since 1897, testified that he helped clean out the Bowman ditch in 1903 or 1904, and he stated:

"The Township Trustees paid us for that clean out job in 1903 and 1904. At that time the trustees had authority to levy their own taxes, funds and their own drainage funds. They haven't that authority now."

It was undisputed that the culvert was destroyed when the road was graded in 1940. But the record shows that it would be of little advantage to plaintiffs to merely restore the culvert now for the ditch across the Welch land has partially filled in. During late years part of the ditch on the Welch land was so shallow that the land was cultivated across the ditch.

■ I. The defendants introduced the records with respect

to another drainage ditch, called the Wilson ditch, which runs in a north-and-south direction through the sections lying immediately east of Section 24. These records show that all of plaintiffs' land lies in this Wilson drainage district. Upon this last documentary evidence with respect to the Wilson drainage district the trial court based its decision that it was without jurisdiction to compel the opening of the culvert or the ditch across the Welch land. The trial court in its decree stated: "* * * to grant the prayer of plaintiffs' petition would be an attempt to usurp the power and authority of the Board of Supervisors given to it by statute to determine the course of drainage within the said Wilson Drainage District." But there was some evidence that there was high ground on the plaintiffs' land between the western part of plaintiffs' land and the Wilson ditch. It is somewhat significant that the east-and-west lateral to the Wilson ditch across Section 24, as originally proposed, was to start at the west side of Section 24 and on the center line of the section. This was changed, upon the engineers' recommendation, so that the lateral as finally constructed starts with the center of the section. As stated, there was abundant evidence that the land in the west portion of Section 24 drained south and west. The plaintiffs, on this appeal, in many divisions in their brief argue that the evidence firmly establishes that the drainage of the west part of their land was south and west over the course of the old Bowman ditch, through the culvert across the road, and through the ditch across the Welch land. We have not detailed all of the evidence, for the defendants in their brief did not reply to the foregoing divisions in plaintiffs' brief but rely entirely on the proposition stated by the trial court, namely, that since plaintiffs'·land was within the Wilson drainage district, then this "conclusively shows that the drainage is to the East." Defendants state in their brief that they pleaded as a defense to plaintiffs' petition that the plaintiffs' land was within the Wilson drainage district. No such defense was in fact pleaded. We are not directed to any authorities holding that the establishment of a drainage district deprives the landowners therein of the rights to the free flowage of surface water as between dominant and servient holders of land

within the district when the established ditch does not in fact drain off such surface water into the ditch. We hold that the mere fact that the land is within an established drainage district is not enough to preclude the owner of the land from asserting rights with respect to surface water that he would have if the land was not included in the district. If he can show that part of his land was not in fact drained by the established ditch but was in fact a dominant tract and drained by another natural or long-established artificial watercourse across the servient land, he is entitled to all the rights of the dominant holder as against the servient holder, the same as if the land was not within the drainage district. We think the evidence here clearly shows that the west part of plaintiffs' land was not drained by the Wilson ditch; that the drainage was to the south and west in the swale still partially existing from the old Bowman ditch that extends across the Welch land.

II. Defendants argue that the Bowman ditch was not legally established. Of course, they mean the ancient records now available do not show that every step required by law with respect to its establishment was complied with. But plaintiffs' rights do not depend upon the legal establishment of the Bowman ditch. The fact remains that there was such a ditch once dug and it remained a watercourse for the drainage of plaintiffs' land until partially destroyed by the filling up of that portion of the watercourse that was on the Welch land and completely destroyed by the destruction of the culvert by the board of supervisors when the road was graded in 1940. Plaintiffs' rights to the relief demanded depend upon whether they have acquired an easement in the watercourse, and even if the Bowman ditch was not legally established it can still be an artificial watercourse upon which easement rights can be based if acquired by prescription. The rule is stated in 67 C. J. 901, 902, section 330:

"An artificial channel, as well as a natural channel, may be a watercourse * * * By what is said to be the weight of authority that which was at first an artificial channel will become a natural watercourse when for all of the years of the prescriptive period it has taken the place, and served principally in lieu, or [of] a natural channel. Likewise, where neighborhood drain-

age ditches have been opened by common consent and used for a series of years, they become watercourses as fully as if they were not of artificial origin, and especially after the period of prescription has run.''

III. The record here shows that the easement existed in favor of the dominant estate for the flow of surface water across the road and across the Welch land. It existed either by virtue of the concert of action by the ancient owners of all this land through which the Bowman ditch was constructed or it existed by prescription in that it was shown to be a watercourse openly used under a claim of right to convey the surface water from the dominant estate across the servient estate to the lake outlet. See Ehler v. Stier, 205 Iowa 678, 216 N. W. 637; Hatton v. Cale, 152 Iowa 485, 132 N. W. 1101; Neuhring v. Schmidt, 130 Iowa 401, 106 N. W. 630; Vannest v. Fleming, 79 Iowa 638, 44 N. W. 906, 8 A. L. R. 277, 18 Am. St. Rep. 387.

Our holding that the easement existed means, of course, that the defendant board and the defendant Welch could not block up the watercourse. With respect to the board of supervisors, see Jacobson v. Camden, 236 Iowa 976, 977, 20 N. W. 2d 407, 408, and cases there cited. In this case Justice Garfield, speaking for the court, stated:

''It is the duty of highway authorities to place openings in highway grades so as to permit surface water to escape in its natural course from the higher to the lower lands.''

IV. But there is no evidence that the ditch on the Welch land was stopped up by action of the landowner. While there is some evidence that the Welch land was cultivated over part of the ditch in recent years, the plaintiffs concede that the stoppage in the Welch ditch was from natural causes due to its filling up with dirt. The engineer testified that the bottom of the Welch ditch would have to be lowered approximately three feet in order adequately to drain off the surface water from plaintiffs' land.

It is the law that the owner of the servient estate, over whose land an easement exists in a watercourse in favor of the owner of the dominant estate, must permit the cleaning out of the

watercourse across his land. See Wessels v. Colebank, 174 Ill. 618, 51 N. E. 639; Bowman v. Bradley, 127 Or. 45, 270 P. 919; Dahlberg v. Lannen, 84 Mont. 68, 274 P. 151; Lamb v. Lamb, 177 N. C. 150, 98 S. E. 307; Holm v. Davis, 41 Utah 200, 125 P. 403, 44 L. R. A., N. S., 89; Pyott v. State, 170 Ind. 118, 83 N. E. 737; 67 C. J. 907.

In Wessels v. Colebank, supra, 174 Ill. 618, 624, 51 N. E. 639, 641, the opinion states:

"The right to keep in repair a way is fully established. The cases on the subject of obstructions erected in or to watercourses or drains are quite numerous, but there seem to be few authorities in regard to the right of entering upon the land of the owner of the servient heritage and removing obstructions occurring through natural causes in an artificial channel. In Chapman v. Thames Manf. Co., 13 Conn. 269, it was held that obstructions in an artificial channel, through which there exists the prescriptive right to flow the waters of a lake, though occasioned by natural causes, may be removed by the persons whose lands are overflowed, without there being any right on the part of the owner of the channel to object. In Roberts v. Roberts, 55 N. Y. 275, the former owner of a tract of land had drained the upper part of it, by means of a ditch, into the lower part, and afterwards conveyed the tract in two parts to different persons. In an action by the owner of the upper tract against the owner of the lower tract the court said: 'If the ditch got out of repair by reason of floods or washing away its banks, or otherwise, it was the legal right of the plaintiff to repair it, so as to restore it to its original condition and make it subserve the purpose which it originally effected,—of carrying off the water of the stream. He was entitled to have the ditch kept up as it was when he purchased, and to keep it in that condition, and, if necessary, to enter upon the defendant's lands to make repairs, doing no unnecessary injury.' In Liford's case, 11 Rep., 46, it is said: 'The law giveth power to him who ought to repair a bridge to enter into the land, and to him who hath a conduit within the land of another to enter the land and mend it when cause requireth, as it was resolved in 9 Edw. IV, 35,' where it was held that the right to scour and amend a trench was incident to a

grant of a right to dig it in another's land for the purpose of drawing water through the same; and the same doctrine is sustained in Peter v. Daniel, 5 C. B. 568. Washburn on Easements, chap. 6, sec. 1, pl. 4. It would seem, therefore, that the common law annexes to the easement of a drain in another's land the right to go upon such land and clean out or repair such drain without doing unnecessary injury to the land.''

In Dahlberg v. Lannen, supra, 84 Mont. 68, 80, 274 P. 151, 154, it is stated:

''It is well settled that a person having an easement in a ditch through the land of another may go upon the servient land and make all necessary repairs and clean the ditch. (9 R. C. L., p. 795; Holm v. Davis, 41 Utah, 200, 44 L. R. A. (n. s.) 89, 125 Pac. 403; Carson v. Gentner, 33 Or. 512, 43 L. R. A. 130, 52 Pac. 506.)''

In Holm v. Davis, supra, 41 Utah 200, 209, 125 P. 403, 407, 44 L. R. A., N. S., 89, there is a quotation from Jones on Easements. The opinion states:

''The right of the owner of an easement is admirably stated by Mr. Jones in his excellent work on Easements, sec. 814, in the following words: 'The owner of a dominant estate having an easement has a right to enter upon the servient estate, and make repairs necessary for the reasonable and convenient use of the easement, doing no unnecessary injury to the servient estate.' A large number of cases in support of the doctrine are collated by the author in a footnote to the section aforesaid to which we refer the reader. The doctrine is also well illustrated and applied to an irrigating ditch by the Supreme Court of California in Joseph v. Ager, 108 Cal. 517, 41 Pac. 422.''

The rule and illustration is thus stated in 17 Am. Jur. 1003, 1004, section 108:

''The dominant owner has the right of access to make repairs and may enter upon the servient estate for this purpose. He may not, however, inflict any unnecessary injury. To illustrate: A person having an easement in a ditch running through the land of another may go upon the servient land and use so

much thereof on either side of the ditch as may be required to make all necessary repairs and to clean out the ditch at all reasonable times; he is liable only for the abuse of this right. It has also been held that the right of access is not limited to purposes of repairing, but may be exercised to make original constructions necessary for the enjoyment of the easement.''

The case of Hatton v. Cale, supra, 152 Iowa 485, 132 N. W. 1101, is much in point. There the defendant, a servient owner, sought, in a cross-bill, an injunction forbidding plaintiff, the dominant owner, from cleaning out a ditch across the defendant's land which had been established many years ago. The court held the plaintiff had an easement and denied the injunction forbidding him from cleaning out the ditch.

We held in Bina v. Bina, 213 Iowa 432, 239 N. W. 68, 78 A. L. R. 1216, that the owner of a road easement across the land of another was entitled to repair the road to render it a suitable passageway. As stated in Bowman v. Bradley, supra, 127 Or. 45, 55, 270 P. 919, 922, the easement for the flowage of water ''differs from no other easement across the land of another.'' It is our holding that plaintiffs are entitled to the relief demanded; that they are entitled to have the culvert restored and the ditch across the Welch land cleaned out.

■ V. As to the cost for constructing the culvert, it is clear that this should be borne by the county. The culvert was destroyed by the county in breach of its duty to place an opening to permit the free flowage of surface water. Jacobson v. Camden, supra.

■ VI. There is no showing by the plaintiff that the open ditch would benefit the Welch land. In plaintiffs' original petition there was no prayer that the owner of the Welch land clean out the ditch and no prayer that the cleaning out of the ditch be done at the expense of Verna Welch. The prayer was merely for a mandatory injunction requiring Verna R. Welch to permit the cleaning out of the ditch. In a subsequent reply plaintiffs alleged their willingness to pay their ''proportionate share of the expense of cleanout of the ditch.'' There is no evidence upon which we could make any fair apportionment. Ordinarily the owner of an easement across the land of another has the

duty to repair the easement when he is the only party benefited by the easement.

It is our holding that the entire cost of the cleaning out of the ditch on the Welch land be borne by plaintiffs. We do not mean to imply that we would in an injunction action like this ever apportion costs in view of our statutes for the establishment of drainage districts and subdrainage districts where costs can be better apportioned. Plaintiffs sought a mandatory injunction to permit the cleaning out of the ditch on the Welch land. That injunction we give them but at their expense and subject to the rule that they commit no unnecessary damage. The culvert will be restored at the expense of the county. The decree of the trial court is reversed and the cause remanded for decree in conformity with this opinion.—Reversed and remanded.

GARFIELD, C. J., and OLIVER, HALE, BLISS, WENNERSTRUM, SMITH, and MANTZ, JJ., concur.

HAYS, J., takes no part.