PORTER v. ARMSTRONG.

(Filed October 15, 1901.)

1. WATERS AND WATERCOURSES—*Draining Lowlands—Acts 1899, Ch. 255—Canal—Ditches.*

Where a person enlarges a canal on the lands of another, under a void proceeding, he is a trespasser, and can not claim credit for money spent thereon.

2. WATERS AND WATERCOURSES — *Draining Lowlands — Acts 1899, Ch. 255—Canals—Ditches—Swamps.*

Acts 1899, ch. 255, for reclaiming swamp or low lands, applies only where all the parties contribute *under a valid agreement* to the lawful digging of a ditch or canal.

3. PARTIES—*Waters and Watercourses—Drains.*

That a servant owner witnesses the enlarging of a drainage ditch by the dominant owner under a statutory proceeding does not make the former a party to such proceeding.

ACTION by Elisha Porter against T. J. Armstrong, Sarah E. Durham and W. W. Miller, heard by Judge *W. A. Hoke,* at March Term, 1901, of the Superior Court of PENDER County. From a judgment of nonsuit, the plaintiff appealed.

*Stevens, Beasley & Weeks,* for the plaintiff.
*J. T. Bland,* and *Frank McNeill,* for the defendants.

DOUGLAS, J. This is a proceeding begun by the plaintiff under Chapter 255 of the Public Laws of 1899. It appears that the plaintiff owns 200 acres of land known as the Pigford farm, while the defendants own about 450 acres of land known as the Durham or Stanley lands, and lying between

the plaintiff and Mill Creek. From time immemorial the owner of the Durham lands has maintained through said lands a ditch, called Strawberry Canal, draining them into Mill Creek. About the year 1859 or 1860, Lane, the then owner of the Durham lands, gave permission to Berry, then owner of the Pigford farm, to connect with Strawberry Canal so as to drain a *part* of the Pigford farm into said canal. The remainder of said farm seems then to have been drained, if drained at all, in some other direction, but whether into Clayton Creek or through some other channel into Mill Creek, does not clearly appear.

The petitioner does not appear to rely upon this permis-sion, which seems to have been a mere license. Even if it amounted to an easement, it would extend only to the drain-age of the "five or six acres of land on the south side of the Pigford farm next to the Durham land," for which it was originally granted, if granted at all. It can not be extended by implication to the entire farm, and certainly not to the waters of Jones' Swamp.

Moreover, the said permission was for only a "four-feet ditch." In *Porter v. Durham,* 74 N. C., 767, this Court says on page 779 : "The defendants alleged that there is an ancient ditch running from Branch No. 1 nearly in the di-rection of the one recently cut by them, and hence claim, as we suppose, a prescriptive right to their ditch. But when the right to an easement is claimed by long enjoyment from which a grant is presumed, the grant presumed is for the precise right which has been enjoyed, and long enjoyment of one ditch can raise no presumption of a grant of a right to a ditch differing in any appreciable degree from that en-joyed, in locality or dimensions." The petitioner, who, in the meantime, purchased the Pigford farm, testifies that in the year 1874 he filed a petition before the Commissioners to open and enlarge Strawberry Canal, as "Durham, the an-

cestor of the defendants, had filled in his Strawberry Canal
with logs so as to dam the water back on the plaintiff's land
and keep his own ditch open below." What became of said
petition we do not know, unless it is one of the petitions re-
ferred to in *Porter v. Durham,* 98 N. C., 320, 321. Again,
the plaintiff testified as follows: "The defendant Armstrong
also filled this ditch in with logs in June, 1896, and backed
the water up on witness's farm. Under the advice of coun-
sel, witness removed the logs and wrote the defendant a letter
about it. About this time the witness applied to the Board
of Commissioners for the privilege of enlarging said canal,
and under an order from the Board, witness did enlarge the
canal on the defendant's land to a depth and width of nine
feet; the ditch was originally four feet before witness thus
contributed to its enlargement. The said improvement cost
this plaintiff $225.00; that Durham was there when plaintiff
cut and widened this canal, and did not object to it. This
proceeding under which plaintiff enlarged the canal was dis-
missed as being irregular and contrary to law." We pre-
sume that the date "1896" in the above quotation should be
"1886," as the case appears to have been determined in this
Court at its September Term, 1887.

The drainage of these lands has been a fruitful source of
litigation, as this is the fourth time it has been before this
Court in one form or another—*Porter v. Durham,* 74 N. C.,
767; same parties, 79 N. C., 596; same parties, 98 N. C.,
320.

The last-named case seems to settle the one at bar, inas-
much as it decided that the defendant Durham was not a
party to the proceeding of 1874, which was therefore void
as to him even when collaterally attacked. The Court well
says that in a summary and special proceeding which results
in appropriating one man's property to the use of another
without the assent of the former, the provisions of the statute

must be strictly followed even in its minute and particular directions, and that the presence of the owner does not make him a party or affect the result. This Court says further, on page 232, 98 N. C.; "We do not think all these safeguards thus thrown around the exercise of this special power can be thus disregarded and a legal result reached in so doing."

It seems to us to follow conclusively that when the plaintiff enlarged Strawberry Canal under a proceeding that was absolutely void, he was a mere trespasser, and can not now claim credit directly or indirectly for money spent in the commission of an unlawful act. And yet this would be the result if his petition were sustained.

The act of 1899 clearly applies solely to those canals or ditches in which the petitioner has acquired an interest either by agreement with the owner or by due process of law. It could have no other constitutional application, as it is well settled that private property can not be taken for public use without just compensation, and never for purposes which are purely private. At one time the constitutionality of our drainage laws was seriously questioned, but was finally settled in the case of *Norfleet v. Cromwell,* 70 N. C., 634; 16 Am. Rep., 787. The Court there says, on page 638, 16 Am. Rep., 787: "The defendant takes higher ground, and contends that the act of 1795 was unconstitutional, because it took his property *for a mere private purpose.* It is admitted that that can not be lawfully done, and the only question on this point is as to the character of the purpose—whether it was to the benefit of one or of a limited number of individuals only, or of such general and public utility as justifies a State in the exercise of its power of eminent domain. It is well known that in the Atlantic section of this State there are hundreds of thousands of acres of what are called swamp lands, which, from the flatness of their surface and the filling up of the natural courses of

drainage, if any ever existed, can not be relieved of the water which ordinarily covers them, and made fit for human habitation and cultivation, except by cutting artificial canals from them into some convenient creek or river, which must necessarily pass through the intervening lands of the riparian proprietors. If these canals can be cut only by permission of the owners of the banks of the necessary outlets, this vast area of fertile land must remain for ages an uncultivated and unpopulated wilderness, and it will be entirely valueless to those who bought it from the State on the faith of its laws. An act which aims to remedy so great an evil, affecting so many persons now living and so many more in the future, must be deemed one of general and public utility." The Court again says, on page 640: "The canal is the private property of the petitioners, but all may acquire a right to drain into it on just terms, and their reciprocal duties may be regulated from time to time by the Courts."

By saying that "the canal is the *private property* of the petitioners," we understand the Court to mean that, as in that case, the petitioners had acquired the easement and constructed the canal entirely at their own expense, they were entitled to its exclusive use as against those who contributed nothing thereto. A stranger could acquire the right to drain into the canal without the consent of its owners, even as they themselves had acquired the easement, but only upon payment of his just proportion of its entire cost, including the easement, together with its construction and future maintenance, and such enlargement as might be rendered necessary by the increased volume of water thus turned into it. Of course, as all such easements arise *ex necessitate,* such right can be acquired only in favor of those lands which can not be conveniently drained in any other way.

We think these principles are clearly recognized both in The Code and in the Act of 1899. In our opinion, the en-

tire scope of the latter act is embodied in its first section, and that it applies only where all the parties have contributed *under a valid agreement* to the lawful digging of a ditch or canal. Such agreement need not be in writing, but it must have existed, and is an essential condition to the contribution contemplated by the Act.

The petitioner at bar has contributed to the cutting of Strawberry Canal only in the performance of an unlawful act, which in contemplation of law is no contribution at all. He does not claim to have contributed in any other manner, and there is no evidence, not even a scintilla, tending to prove that he did so.

Hence, there was no error in the direction of a nonsuit, as the burden rested upon the petitioner of proving every material fact necessary to the granting of this petition.

This brings the case clearly within the rule laid down in *Spruill v. Insurance Company,* 120 N. C., 141, which is relied on by the petitioner.

Much stress seems to be laid upon the fact that the natural drainway of the Pigford farm was through Strawberry Canal. This may be so in the sense that it is the most convenient way to drain the said farm, but that fact does not make the canal a *natural* watercourse. A watercourse consists of bed, banks and water. Angell on Watercourses, sec. 4; Gould on Waters, sec. 41. A *natural* watercourse has such characteristics while in a state of nature and without artificial construction. Natural watercourses are such as rivers, creeks and branches. A canal can never come under such a designation, unless it is a mere enlargement of a natural watercourse. It does not appear that the water from Pigford farm, at least in its concentrated form, ever got into the Strawberry Canal until it was carried there by a ditch, which is itself fed by "lateral ditches running in both directions."

Hence, this case does not come within the principle affirmed in *Mizell v. McGowan,* at this term, and the cases therein cited. In that case the defendant's ditches emptied into a *natural* watercourse before it left the defendant's land. Here, the petitioner is seeking to open a ditch on another man's land.

While the question is not now before us, we see no reason, as at present advised, why the petitioner can not proceed under Chapter 30 of The Code. In that event it would seem that he would be compelled to pay, not only his just proportion of the cost of construction, maintenance and repair of the canal, but also the value of the easement.

All that we now decide is that the petitioner, having in contemplation of law contributed nothing to the digging of Strawberry Canal, can not proceed under Chapter 255 of the Laws of 1899, which, in our opinion, applies only where the petitioner has a vested interest.

No Error.