ADAM DARR AND FLORA DARR v. CAROLINA ALUMINUM COMPANY.

(Filed 16 June, 1939.)

**1. Waters and Water Courses § 4: Easement § 2—**

An upper landowner does not have an easement by necessity to drain his land by a ditch extending across the lower lands of another, even though this is the most convenient or the only way by which he can drain his land.

**2. Waters and Water Courses § 4: Easement § 3—**

A mere showing of the use of a drainage ditch across the lands of another is insufficient to establish a prescriptive right to the use of such ditch, since in the absence of evidence in rebuttal such use will be presumed permissive and not adverse.

**3. Waters and Water Courses § 12—Evidence held not to show any interference with any vested right of defendant in use of drainage ditch.**

Plaintiff's evidence tended to show that he had drained his land through a ditch which had been dug, beginning on his land and running through the lands of another and thence into a river, that subsequently defendant built and maintained a dam lower down upon the river which caused deceleration in the flow of the water resulting in the deposit of sand and the growth of vegetation along the river and the mouth of the drainage ditch upon the lands of the lower proprietor so that the drainage ditch failed to properly drain plaintiff's land. *Held:* Upon plaintiff's failure to establish that he had a vested legal right to use the drainage ditch on the lands of the lower proprietor by deed or prescription, defendant's motion to nonsuit was properly granted, since the evidence fails to show any interference with any vested legal right of plaintiff.

APPEAL by plaintiffs from *Phillips, J.,* at September Term, 1938, of DAVIDSON.

Civil action for recovery of permanent damages to land and damage to crops allegedly resulting from unlawful and negligent acts of defendant in "prohibiting the natural drainage and natural flow of water" along the streams over certain lands of plaintiffs.

These facts are not controverted: Plaintiffs are the owners of a farm containing approximately 145 acres, situated in Boone township, Davidson County. It is bounded on the north by lands of J. F. Barnhart; on the south by lands of the Shoaf heirs; and on the west by the Yadkin River, which flows in a southern direction. About 40 acres of the farm are in a basin, bounded on three sides by higher land. The land along the banks of the river, the land along the southern boundary, and that part of plaintiff's land to the east of basin are higher than that in the basin. Rising several miles to the northeast, Tanyard Branch runs in a southwestern direction across plaintiffs' lands and then through a

portion of the lands of the Shoaf heirs, and empties into the east side of the Yadkin River on the Shoaf land. Meadow Ditch begins north of plaintiffs' lands and extends in a southern direction almost parallel to the river, over plaintiffs' farm, and through the ridge on the southern boundary thereof, and approximately 450 feet across the lands of the Shoaf heirs and connects with Tanyard Branch on the Shoaf land, about 600 feet from the river.

In 1927 defendant completed the construction of a dam across Yadkin River at High Rock, which created a lake covering a large area, and extending several miles up the river. Defendant has purchased and owns water rights up the river to and on the Shoaf lands on both sides of and up Tanyard Branch beyond the mouth of Meadow Ditch, and for 225 feet up and on both sides of Meadow Ditch.

Plaintiffs allege in substance: That the lake created by defendant's dam at High Rock has caused the channel of Yadkin River to become filled with sand, debris, and growth, which in turn has caused its tributary streams that flow over plaintiffs' land to become so filled with "sand, vegetable growth, bushes, and other impediments" as to prevent the natural flow therein of water from the lands of the plaintiffs, and above, and to become ponded upon their land to their damage; and that this condition is due to and caused by negligence of defendant in permitting the streams to fill up and in failing to keep them cleaned out and drained.

Defendant denies the material allegations in these respects.

Plaintiff offered evidence tending to show in substance: That the lake created by defendant's dam at High Rock has retarded the natural flow of the water of Yadkin River to such an extent that the channel has gradually filled up with sand, thereby raising the level of the water, which has impeded the natural rapid flow of water in the river at the mouth of Tanyard Branch; that, as a result, the rapidity of the flow of water in Tanyard Branch has been so lessened that the branch has filled up with sand, debris and undergrowth, and timber; that the filling up of Tanyard Branch has raised the channel of that branch to such an extent that it is higher than the mouth of Meadow Ditch; and that as a result the flow of the water in Meadow Ditch has been so retarded as to permit sand and silt to settle therein and to obstruct the drainage and flow of Meadow Ditch across their land, causing water to pond in the lowest parts of the basin, and about 10 acres of the land to become soaked, soggy, and sour, and unfit for farming, to which use it has been devoted for years, by which plaintiffs are damaged in various estimates.

Defendant offered evidence tending to refute such evidence of plaintiffs.

25—215

Evidence offered by plaintiff further tended to show that, while Meadow Ditch, which some of the witnesses called Meadow Branch, has existed for more than 70 years, it is not a natural watercourse. The witness P. C. Shoaf, testifying for plaintiff, said: "Mr. Darr's meadow back up there is kinder of a swag, . . . The ditch goes through kind of a ridge over into Tanyard Branch. It is cut pretty deep there."

R. K. Williams, testifying for plaintiff, said: "This land where overflows and drowns out I estimate is four feet lower than the land below there down next to Tanyard Branch where the ditch is cut through that high ridge. That is the reason why the ditch is so much deeper toward the lower end than it is up where it is overflowed." Again, the same witness testified: "Still that ditch has got to be cut through that high ridge to drain that land above. That ditch was not a natural drainage, it was bound to have been cut there. There is no other low place below that basin to cut a ditch through."

There is evidence that Meadow Ditch has been cleaned out on the plaintiffs' land from time to time for 25 years. However, there is no evidence that it has been cleaned out across the Shoaf land, nor is there evidence of the circumstances under which the ditch was constructed, nor is there evidence of adverse user over the Shoaf land.

Reserving exception to refusal of motion for judgment as in case of nonsuit at the close of plaintiffs' evidence, defendant offered evidence, and renewed motion for nonsuit at the close of all the evidence. The motion was allowed. From judgment in accordance therewith, plaintiffs appeal to Supreme Court and assign error.

*P. V. Critcher and McCrary & DeLapp for plaintiffs, appellants.*
*R. L. Smith & Son, Don A. Walser, and Paul R. Roper for defendant, appellee.*

WINBORNE, J. The evidence presented in the record on this appeal, considered in the light most favorable to plaintiffs, is insufficient to require the submission of issues to the jury.

The action is laid upon allegations that defendant has obstructed the natural flow of watercourses over plaintiffs' land.

Plaintiffs offered evidence tending to show that it is the obstructing of the flow of water in Meadow Ditch on the lands of the Shoaf heirs that has caused the alleged damage to their land. But on the very threshold of the case there is a lack of evidence tending to show that Meadow Ditch is a natural stream or water course. To the contrary, all the evidence discloses that it is an artificial stream—a ditch cut through a ridge of land which separates plaintiffs' bottom land from

the Shoaf land through which the ditch runs in entering Tanyard Branch, where plaintiffs claim the obstructions to be.

In *Brown v. R. R.,* 165 N. C., 392, 81 S. E., 450, it is said that the upper landowner "cannot artificially increase the natural quantity of water, or change its natural manner of flow by collecting it in a ditch and discharging it upon the servient land at a different place or in a different manner from its natural discharge." *Porter v. Durham,* 74 N. C., 767, at 780; *Briscoe v. Parker,* 145 N. C., 14, 58 S. E., 443.

In *Porter v. Armstrong,* 129 N. C., 101, 39 S. E., 799, speaking to the question of what is a natural watercourse, the court said: "Much stress seems to be laid upon the fact that the natural drainway of the Pigford farm was through Strawberry Canal. This may be so in the sense that it is the most convenient way to drain the said farm, but that fact does not make the canal a natural watercourse. A watercourse consists of bed, banks and water. Angell on Watercourses, sec. 4; Gould on Waters, sec. 41. A natural watercourse has such characteristics while in a state of nature and without artificial construction. Natural watercourses are such as rivers, creeks, and branches. A canal can never come under such a designation, unless it is a mere enlargement of a natural watercourse."

Applied to the case in hand, Meadow Ditch as described in the evidence brought forward, not being a natural watercourse, and, nothing else appearing, plaintiffs have no legal right to collect the water on their land and discharge it through that ditch over the lands of another.

But, while plaintiffs do not allege that they have acquired any easement or right to use Meadow Ditch across and on the land of the Shoaf heirs, it is here contended by them that they have the legal right to drain their lands through the ditch on their land and through the ridge and land of intervening owners into Tanyard Branch, for two reasons: (1) By necessity; (2) By prescription.

If it be a fact that drainage through Meadow Ditch is the most feasible way to drain the plaintiffs' farm, that fact does not make the ditch a natural watercourse. *Porter v. Armstrong, supra.* Commenting upon a case of similar character, Angell in his treatise on the Law of Watercourses, p. 134, quotes from *Butler v. Peck,* 16 Ohio St., 334, where this question is stated: "Whether an owner of land having upon it a marshy sink or basin of water which basin as to considerable portion of the water which collects within it, has no natural outlet, may lawfully throw such water by artificial drains, upon the lands of an adjacent proprietor?" and answers: "We are clear that no such right exists. It would sanction the creation, by artificial means, of a servitude which nature has denied."

The question here is not whether it is the only way to drain plaintiffs' meadow land, but whether plaintiffs have acquired the right to drain their lands by means of an artificial ditch over the lands of another.

On the second contention: The rule with respect to acquiring prescriptive rights over private property is firmly imbedded in the law.

In 17 Am. Jurisprudence, 986, Easements, sec. 85, the writer states: "It is a well settled rule that a right of drainage of waters through the lands of another may be acquired by prescription. The right, however, can be created only by actual use which has been adverse, peaceable, uninterrupted, and continued for the prescriptive period."

In *Snowden v. Bell,* 159 N. C., 497, 75 S. E., 721, *Allen, J.,* said: "It is well established in this State that the right to a private way may be acquired by a continuous adverse use for 20 years, and that a mere user for the required period is not sufficient to confer the right." See, also, same case reported in 166 N. C., 208, 80 S. E., 888. *Boyden v. Achenbach,* 86 N. C., 397; *S. v. Norris,* 174 N. C., 808, 93 S. E., 950; *Nash v. Shute,* 184 N. C., 383, 114 S. E., 470; *Perry v. White,* 185 N. C., 79, 116 S. E., 84; *Durham v. Wright,* 190 N. C., 568, 130 S. E., 161; *Weaver v. Pitts,* 191 N. C., 747, 133 S. E., 2; *Grant v. Power Co.,* 196 N. C., 617, 146 S. E., 531; *Gruber v. Ewbanks,* 197 N. C., 280, 148 S. E., 246; *Hemphill v. Board of Aldermen,* 212 N. C., 185, 193 S. E., 153.

In *Boyden v. Achenbach, supra,* it was held that "there must be some evidence accompanying the user giving it a hostile character and repelling the inference that it is permissive and with the owner's consent, in order to create the easement by prescription and impose the burden on the land." This principle is cited with approval in *Nash v. Shute, supra.*

In *Perry v. White, supra,* this Court, speaking through *Clark, C. J.,* said: "Conceding that the ditch had existed and been kept up continuously for draining plaintiffs' land for the past 30 years over the land of the defendant, the plaintiffs would not have acquired the right of easement thereby. This user may have been permissive, and the law presumes that it was. Mere user for 30 years will not confer an easement unless it appears that it was adverse."

Applying these principles to the case at bar, mere user is the only evidence of right in plaintiffs to use Meadow Ditch across the Shoaf lands. The presumption that this use was permissive, and not adverse, is not rebutted. If it then be conceded that the condition at the junction of Yadkin River and Tanyard Branch, and of Tanyard Branch and Meadow Ditch are as plaintiffs contend, defendant at most has deprived them of facilities for their own drainage which they before possessed and used, but without vested right so to do. See *Willey v.*

GEORGE *v.* R. R.

*R. R.,* 98 N. C., 263, 3 S. E., 485, in which the factual situation and rights of parties are not dissimilar to the present case.

This disposes of the appeal, and dispenses with necessity to inquire into the relative rights and responsibilities of the parties with respect to conditions about which plaintiffs complain.

The judgment below is

Affirmed.