Forrest **L. AUCHMUTY** and Laura Mae
Auchmuty, Appellants (Defendants
below),

v.

**CHICAGO, BURLINGTON & QUINCY
RAILROAD COMPANY, an Illinois Cor-
poration, and the City of Sheridan, a Mu-
nicipal Corporation, Appellees (Plaintiffs
below).**

No. 2911.

Supreme Court of Wyoming.
Feb. 2, 1960.

Philip S. Garbutt and R. G. Diefenderfer,
Sheridan, for appellants.

Robert E. Holstedt and Bruce P. Badley,
Sheridan, for appellees.

Before BLUME, C. J., and PARKER
and HARNSBERGER, JJ.

Mr. Chief Justice BLUME delivered the
opinion of the court.

This action was brought by the Chicago,
Burlington & Quincy Railroad Company, a
common carrier, and the City of Sheridan
against Forrest L. Auchmuty and Laura
Mae Auchmuty to remove a dam over and
across a certain ditch running in and out-
side of the City of Sheridan.

It is alleged in what is called the first
claim in the petition that the railroad com-
pany owns certain lands adjacent to the
dam hereinbefore mentioned; that the de-
fendants are the owners of the NW¼ of
the NW¼ of Sec. 23, T. 56 N, R. 84 W of
the 6th P.M.; that the tract of land owned
by the defendants lies north and east of the
tracts and parcels of land owned by the
railroad company and north and east of the
boundaries of the City of Sheridan; that a
ditch known as the Grinnell Irrigation
Ditch and sometimes known as the Little
Goose Ditch runs in a northerly and west-
erly direction across lands of the plaintiff
railroad company and through and across
lands of the defendants and in and through
the City of Sheridan; that for a period
of over ten years prior to 1955 the ditch
mentioned has been used to drain the lands
adjacent thereto, including the lands of
the railroad company and part of the City
of Sheridan; that during 1955 the de-
fendants completely blocked, dammed and
obstructed said ditch by constructing a
dam and obstruction therein extending
from one bank of the ditch to the opposite
bank; that said dam and obstruction was
located in the ditch at a place north of the
north line of the plaintiff railroad com-
pany's lands; that no openings, spillways,
or outlets were or ever have been made
in or around said dam and obstruction to
allow the water in said ditch to pass; that
said dam and obstruction has blocked,
dammed and obstructed the ditch and all
drainage and flowage of water therein;

and that "Said land, property, right of way, and yards of the plaintiff Railroad Company are, and at diverse times have been, and will be, inundated and washed, and water soaked; and the roadbed and yards have thereby been softened and greatly injured and damaged, and will in the future be greatly injured and damaged", if the dam were continued to be maintained. The railroad operations of the plaintiff railroad company are and may be imperiled by the reason of the flooding and inundation of the land, property, rights of way and yards, and in the future the traveling public on the plaintiff's trains may be subjected to serious delay as well as grave danger. On the part of the city it is alleged that the ditch enters the city and flows and runs through the city and out of the city in a northerly direction. In what is called the second claim, the petition, among other things, alleges that for many years and long prior to the time that defendants became the owners of their land above mentioned, "the natural surface and drainage waters developed on the lands adjacent to and along said ditch within the City limits have flowed into and been carried away by said drainage ditch, and said ditch has also for many years carried, and still carries, from and through the plaintiff City the waters of freshets, floods, and high water which have periodically occurred in, along, and adjacent to said drainage ditch both within and outside plaintiff City." It it further alleged in connection with the obstruction of said ditch:

"* * * Said streets, roads, public places, land, and property of the plaintiff City are, and at diverse times have been, and will be, thereby inundated and washed, water soaked, and damaged. The streets, roads, public places, sewer system, and other public works of the plaintiff City, and land and property of third parties located therein are, and in the future will be, subject to injury and damage so resulting from the unlawful construction and improper maintenance and operation of said dam * * *."

As a third claim the petition alleged in paragraph 2 that for more than ten years prior to the construction of the dam above mentioned the plaintiffs and each of them openly, notoriously, adversely, continuously, uninterruptedly, peaceably, exclusively, and under a claim of right so to do, had asserted against all the world the right to have the ditch unobstructed. Plaintiffs prayed for a mandatory injunction commanding the defendants to remove the dam and keep the ditch open.

In the answer defendants admitted that they owned the land alleged to be owned by them in the petition of the plaintiffs and admitted that their tract lies north and east of the boundaries of the plaintiff city. They further admitted that "since the construction of said dam and obstruction, the same has prevented and stopped the flow of water through said ditch, below the location thereof, and at times of heavy rainfall, melting snow, and high waters, the waters flowing in said ditch have been, and will be, obstructed, held back, and retarded by said dam and obstruction and by ice, brush, and debris catching and lodging thereon." They alleged that the dam was constructed for the lawful purpose of preventing their lands from being subjected to the nuisance of water running across their land in the ditch. As to the remainder of the allegations of the petition, including the allegations of paragraph 2 of the third claim, the defendants briefly stated that they were without information or knowledge sufficient to form a belief as to the truth of the averments. They prayed that the complaint of plaintiffs be dismissed and that they had the right to obstruct the ditch.

On January 14, 1959, plaintiffs moved the court to enter a summary judgment based upon the pleadings filed in the case and the affidavits filed in support thereof. A number of affidavits were attached both on the part of the city as well as the railroad company. By the affidavit of Walker S. Johnston, Assistant Superintendent of the Sheridan Division of the Chicago, Burlington & Quincy Railroad Company, it appears that the land of the railroad

company is adjacent to the ditch in question and that the dam and obstruction heretofore mentioned has damaged the property of the railroad company and will continue to do so if the dam is not removed and will endanger the traffic on and around its tracks. By the affidavit of L. M. Cross, Roadmaster for the Chicago, Burlington & Quincy Railroad Company at Sheridan, Wyoming, it appears that he has known of the Grinnell Irrigation Ditch since 1938, the ditch being located in part upon the lands of the railroad company; that since 1938 the plaintiff railroad company performed from time to time maintenance and repair work on the ditch in order that the ditch could continue to be used as a drainage ditch. Further, he stated that in 1950 the ditch across the plaintiff railroad company's land was cleaned out by the railroad company at the request of the City of Sheridan; and that in the spring of 1956, after the dam above mentioned was constructed, the property of the railroad company was damaged to a considerable extent.

By the affidavit of Harry Brunsell, Yardmaster for the railroad company at Sheridan, Wyoming, the following appears: Affiant is thoroughly acquainted with the lands of the railroad company and of the defendants. He has been a resident in the area since 1917 and knows that the drainage ditch known as the Grinnell Irrigation Ditch and sometimes known as the Little Goose Ditch is and has been located on the lands of the plaintiff railroad company and has run across the lands of that company, carrying surface drainage and other waters off of the lands of the plaintiff railroad company. During that time the railroad company performed maintenance and repair work on the aforementioned ditch in order that said ditch could continue to be used as such irrigation ditch, and prior to the time that the dam was constructed by the defendants the ditch was in good order and carried drainage in the ditch across the lands of the defendants and back into the lands of the plaintiff railroad company.

By the affidavit of Wilbert Wehr, the following appears: Affiant has been a resident of Sheridan County, Wyoming, for a long period of time. He knows that since approximately the year 1920 the drainage ditch known as the Grinnell Irrigation Ditch and sometimes as Little Goose Ditch was being used for drainage purposes to drain the areas of the City of Sheridan and of the railroad company located north of Fifth Street and east of the railroad company's tracks, said drainage being carried north into the Goose Creek north of Sheridan. He knows that on numerous occasions since the year 1920, during periods of heavy run-off water, the ditch has run full in carrying off the drainage from the area mentioned.

By the affidavit of Roy L. Bosley, the following appears: He has been a resident of Sheridan, Wyoming, since 1913; he is well-acquainted with the drainage ditch known as the Grinnell Irrigation Ditch or Little Goose Ditch; when he first came to Sheridan the ditch was used for the purpose of irrigation but during the early 1920's the ditch ceased to be used as an irrigation ditch and from that time on was, has been and still is used as a drainage ditch to drain the water from that area of the city; the people in that area have always considered this ditch as a drainage ditch in the area; and if the ditch were not there and not used as a drainage ditch, the water running down Fifth Street and from the draw just south of Fifth Street would then be caused to run all over that area of the City of Sheridan lying north of Fifth Street and east of the railroad tracks.

The affidavit of James R. Wright shows the following: He is an employee of the City of Sheridan and has been the City Engineer for the period of seven years; he is personally in charge of the records of the city engineer's office; from these records and from his personal knowledge, he knows that the city does not have any storm sewer system located in the area of the City of Sheridan that lies east of the railroad tracks and north of Fifth Street; the only method that the city has for draining surface waters and run-off waters that

flow from the hills to the east of the city is the use of the drainage ditch known as the Grinnell Irrigation Ditch and sometimes as the Little Goose Ditch; this drainage ditch has been used by the city and still is used by the city for surface drainage in that area; if the ditch were not in use the city would be compelled to construct a storm sewer; and from the records in his office he knows that the City of Sheridan has from time to time caused maintenance to be made on the ditch aforesaid for drainage purposes.

No affidavits whatever were filed contradicting the affidavits filed by the plaintiffs herein, and thereupon the court entered a summary judgment requiring the defendants to remove the dam and to keep the ditch open from any obstruction. From that judgment so entered the defendants have appealed.

■ 1. It is contended by the plaintiffs and appellees herein that by reason of long usage the Grinnell Irrigation Ditch, or Little Goose Ditch, has become a natural watercourse by prescription, calling attention to the fact that an artificial channel as well as a natural channel may become a watercourse, citing Nixon v. Welch, 238 Iowa 34, 24 N.W.2d 476, 169 A.L.R. 1141. There is at least a doubt that the contention is valid. It is stated in 93 C.J.S. Waters § 129, pp. 841, 842:

"* * * an artificial watercourse may become a natural watercourse under some circumstances, and by what is said to be the weight of authority that which was at first an artificial channel will become a natural watercourse when for all of the years of the prescriptive period it has taken the place, and served principally in lieu, of a natural channel, providing it has all the essential elements of a watercourse. * * *"

It may be noted from the last sentence that the ditch, in order to be considered a natural watercourse, must have the essential elements of such a watercourse. In the case of Darr v. Carolina Aluminum Co., 215 N.C. 768, 3 S.E.2d 434, 436, the court stated:

"In Porter v. Armstrong, 129 N.C. 101, 39 S.E. 799, 801, speaking to the question of what is a natural water course, the Court said: 'Much stress seems to be laid upon the fact that the natural drainway of the Pigford farm was through Strawberry canal. This may be so in the sense that it is the most convenient way to drain the said farm, but that fact does not make the canal a natural water course. A water course consists of bed, banks, and water. Ang.Water Courses, § 4; Gould, Waters, § 41. A natural watercourse has such characteristics while in a state of nature and without artificial construction. Natural watercourses are such as rivers, creeks, and branches. A canal can never come under such a designation unless it is a mere enlargement of a natural water course.'"

In the case at bar we have not been informed as to the width or the depth of the drainage ditch in question and whether it has banks such as are required in order to constitute a watercourse.

■ 2. Counsel for plaintiffs and appellees further contend that they have obtained the right of easement to the use of the aforementioned ditch across the defendants' and appellants' land for drainage purposes. That contention seems to be well taken. In 3 Farnham, Waters and Water Rights, 1904, pp. 2687, 2688, the author states:

"The right to maintain an artificial drain or ditch across another's property may be acquired by prescription. As said in Wilkins v. Nicolai [99 Wis. 178, 74 N.W. 103], one acquires by twenty years of open, notorious, continuous adverse use and enjoyment of an artificial ditch to drain water from his land onto and across that of an adjoining owner without objection by such owner, a prescriptive right to a continuance of such use and enjoyment. Such open, notorious, and continuous use for twenty years, without objection by the servient owner, is

prima facie evidence of adverse possession or use, and, together with such circumstances, establishes title by prescription unless explained as consistent with the title of the true owner by some showing that such use was under a lease, contract, or permission of some kind. * * *"

In 17A Am.Jur. Easements § 91, p. 705, it is stated:

"* * * It is a well-settled rule that a right of drainage of waters through the lands of another may be acquired by prescription. The right, however, can be created only by an actual use which has been adverse, peaceable, uninterrupted, and continued for the prescriptive period * * *."

In the case at bar, it is clear that the ditch here in question has been used for drainage of the lands of the city and the railroad company for the prescriptive period. The testimony shows that it has been so used for at least thirty-five years. In fact, it is quite probable that the water from adjoining lands drained into the ditch during the time that it was still used as an irrigation ditch since the ditch appears to be the natural outlet for the surface waters from the adjoining lands, ultimately emptying into Goose Creek to the north. It does not specifically appear that the use of the ditch for drainage purposes has been peaceable, uninterrupted and continuous, but we think that that may be inferred from the petition and the affidavits appended thereto, in the absence of a denial of the allegations in the affidavits, which show that the ditch has been used for drainage purposes since 1920 and that it has from time to time been cleaned by the city and by the railroad company. In any event, it is alleged in the petition, as heretofore stated, that the ditch has been used for drainage purposes by the plaintiffs and appellees "openly, notoriously, adversely, continuously, uninterruptedly, peaceably, exclusively, and under a claim of right so to do." That allegation is not denied. The defendants and appellants in their answer merely stated they were without information or knowledge sufficient to form a belief as to the truth of the averments.

Counsel for the defendants and appellants contend that the use above mentioned was permissive and that hence no right by prescription was obtained by the plaintiffs and appellees. The authorities on the subject are not quite uniform, but it is stated in 17A Am.Jur. Easements § 73, pp. 684, 685, as follows:

"* * * The prevailing rule, however, is that where a claimant has shown an open, visible, continuous, and unmolested use of land for the period of time sufficient to acquire an easement by adverse user, the use will be presumed to be adverse and under a claim of right; and the owner of the servient estate, in order to avoid the acquisition of an easement by prescription, has the burden of rebutting this presumption by showing that the use was permissive. * * *"

See also 28 C.J.S. Easements § 68, pp. 735, 736, and 3 Farnham, Waters and Water Rights, 1904, p. 2688.

We do not have a case before us in which the city or the railroad company has collected surface water and has thrown the collected water into the ditch here in question. In this case, as already heretofore stated, the surface water appears to have found a natural outlet in the ditch. The owner of the land through which the ditch was constructed could not have prevented the surface water from entering it unless he took some affirmative steps for such prevention, so that in the absence of taking such steps the use of the ditch for drainage purposes would seem to be clearly adverse. Whether the owner of the land who permitted the ditch to be constructed could from the beginning have taken steps to prevent surface water from entering the ditch and thus oppose the forces of nature is another question which we need not determine. See 93 C.J.S. Waters § 114; and Weeks v. Freeman, 48 Mich. 255, 12 N.W. 215, where it was said that if defendant acquiesced in the opening of a neighborhood ditch and years later wilful-

ly obstructed it, he is liable. See also Soules v. Northern Pac. R. Co., 34 N.D. 7, 157 N.W. 823, L.R.A.1917A, 501. In the case at bar, steps taken to prevent the use of the ditch for drainage purposes came too late and the dam constructed by defendants was a nuisance and plaintiffs had the right to have it abated. Big Horn Power Co. v. State, 23 Wyo. 271, 148 P. 1110; Clarke v. Boysen, 10 Cir., 39 F.2d 800, certiorari denied 282 U.S. 869, 51 S.Ct. 75, 75 L.Ed. 768.

A motion was filed here to dismiss the appeal on the ground that the appellants failed to file a designation of a part of the record in accordance with Rule 75(a), Wyoming Rules of Civil Procedure. In view of what we have said we need not consider or pass upon that motion.

The judgment of the trial court must be and is affirmed.

Affirmed.